

# THOMAS AMBROSIO
## ATTORNEY AT LAW
Member of NJ & NY Bars

June 3, 2026

Hon. Philip M. Halpern, USDJ
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Supplemental Sentencing Submission
USA vs Octavious Griffin, 22 Cr. 641

Dear Judge Halpern,

Defendant Octavious Griffin respectfully submits this supplemental memorandum in response to the Court's Order of May 28, 2026, directing the parties to address the impact of trial testimony in *United States v. Thomas Rodriguez*, No. 22-cr-641-13, on the three-level role enhancement assessed by the Probation Office pursuant to U.S.S.G. § 3B1.1(b) (PSR ¶ 105). For the reasons set forth below, that testimony does not support the enhancement and the Court should decline to impose it.

The Court's Order attaches excerpts from the trial testimony of "Almighty Ward" in the Rodriguez trial. That testimony describes two armed robberies in which Ward participated alongside the defendant, then identified as "Tate." The Government cited those robberies during the Rodriguez trial as evidence that Griffin gave Ward his "deal" to join the Grimz. On cross-examination, however, the full picture emerged. Defense counsel established that Ward joined Griffin in the robberies not because Griffin directed him to do so as a supervisor directing a subordinate, but because Ward was "just turning Grim" and "if [Griffin] said I had to go, I had to go."

That exchange is decisive. Ward's testimony — taken in its entirety — does not show that Griffin organized, directed, or controlled Ward in any managerial sense. It shows that both men participated together in street-level criminal acts as co-participants, with Ward following Griffin

because both were operating within the Grimz structure, not because Griffin held supervisory authority over Ward's day-to-day conduct. This testimony is legally insufficient to establish the "control and authority exercised over others" that the Second Circuit requires before a § 3B1.1(b) enhancement may be imposed.

**THE LEGAL STANDARD GOVERNING U.S.S.G. § 3B1.1(b)**

Section 3B1.1(b) provides a three-level enhancement when "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants." U.S.S.G. § 3B1.1(b). Application Note 2 makes clear that the defendant "must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1 cmt. n.2. Application Note 4 identifies seven factors a court should consider, including "[1] the exercise of decision making authority, [2] the nature of participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of participation in planning or organizing the offense, [6] the nature and scope of the illegal activity, and [7] the degree of control and authority exercised over others." U.S.S.G. § 3B1.1 cmt. n.4. Critically, the same Application Note directs that "titles such as 'kingpin' or 'boss' are not controlling." *Id.*

The Second Circuit has made clear that the touchstone of the § 3B1.1(b) inquiry is actual control over — or a significant supervisory role in directing — another participant. "A defendant is properly considered as a manager or supervisor under § 3B1.1(b) if he exercised some degree of control over others involved in the offense or played a significant role in the decision to recruit or to supervise lower-level participants." *United States v. Hertular*, 562 F.3d 433, 448 (2d Cir. 2009). Mere membership in an organization, even membership at an elevated rank, is not sufficient. *See United States v. Burgos*, 324 F.3d 88, 92 (2d Cir. 2003) (adjustment is mandatory once management or supervision is *found*, but the finding must rest on actual conduct, not title).

The government bears the burden of proving the factual predicates for an enhancement by a preponderance of the evidence. *See id.*; *United States v. Booker*, 543 U.S. 220 (2005). Here, the plea agreement contains no role adjustment and the defendant did not allocute to managerial conduct, the government's burden is a meaningful one that trial testimony from a cooperator in a separate proceeding cannot meet on its own.

**Ward's Own Cross-Examination Undermines Any Inference of Control**

The Government's direct examination established that Ward committed two robberies alongside Griffin as his "deal" to join the Grimz — acts of violence prospective members must perform to demonstrate loyalty. Trial Tr. at 149–52. Ward identified Griffin ("Tate") as the person who gave him his deal. Trial Tr. at 150. The Government presented this as evidence of Griffin's role in bringing Ward into the gang.

But defense counsel's cross-examination revealed the critical context the Government's questioning omitted. When asked about the robberies, Ward explained: "I was just turning Grim. . . . if [Tate] said I had to go, I had to go." Trial Tr. at 309. When pressed further — "Would you do whatever they told you to?" — Ward answered, "Yes." *Id.* Ward was not testifying that Griffin directed him as a manager directs an employee. He was testifying that new Grimz recruits are required to follow the direction of more senior members as an aspect of gang membership itself. This is qualitatively different from the day-to-day supervisory control the Second Circuit requires.

Critically, "deal-giving" is how every Grimz member — including Griffin himself — was initiated. PSR ¶ 38. Giving a deal is a gang initiation mechanism, not an exercise of managerial authority over a subordinate in any legally cognizable sense under § 3B1.1(b). The fact that Griffin, as a more senior member, was present at robberies in which Ward participated shows that Griffin was a higher-ranked *participant*, not that he was Ward's manager or supervisor in the way those terms are understood in sentencing law.

**The Robberies Reflect Co-Participation, Not Supervision**

Both robberies described in Ward's trial testimony were two-person, street-level criminal acts. Trial Tr. at 151–53. In the first, Ward and Griffin robbed "somebody from the stoop" at Gidney and Liberty in Newburgh; in the second, the two robbed "PRT." Trial Tr. at 151–52. In both instances, Ward and Griffin were side by side — Griffin carried the firearm and Ward participated. There is no evidence that Griffin issued tactical directions, controlled the proceeds, or structured Ward's participation in any ongoing fashion.

This is precisely the type of co-participation that courts distinguish from supervisory conduct. The Second Circuit has recognized that the enhancement targets defendants who

exercise "control and authority over others," not merely those who commit crimes alongside them. *Hertular*, 562 F.3d at 448. Participating in a robbery as the armed member does not transform a co-participant into a supervisor of his partner. Under that standard, Ward himself would become the "supervisor" of any future recruit he took on a deal — a result that cannot reflect congressional or Commission intent.

**Griffin's Plea Allocution Described Membership, Not Management**

At the guilty plea proceeding on March 21, 2025, Griffin stated under oath that he "was a member of the enterprise" who "agreed with others to distribute narcotics" and "in or about 2019, during my participation with The Grimz, . . . brandished a firearm in furtherance of a robbery." Plea Tr. at 27. He did not allocute to recruiting anyone, directing anyone, or supervising anyone. When the Government attempted to elicit broader admissions, defense counsel objected and the Court proceeded on Griffin's narrow allocution alone. Ward's testimony — two initiation robberies — is entirely consistent with that narrow allocution. It adds nothing that converts membership into management.

**The PSR's Comparative Analysis Compels the Same Conclusion**

The PSR found that role adjustments were **not** warranted for Markell Williams, Tyrell Simon, Justice Jackson, and Shamell Williams — all of whom personally committed multiple armed robberies, in at least two instances wounding victims. PSR ¶¶ 74, 76, 78, 79. The PSR did find an adjustment warranted for Messiah Jackson, whom it explicitly labeled a "manager/supervisor" based on specific conduct: directing members about narcotics proceeds, demanding a share of street-level drug sales, and actively recruiting minors into the drug trade. PSR ¶¶ 71–72.

Griffin's conduct as reflected in both the PSR and the Rodriguez trial testimony bears far closer resemblance to the adjustment-free co-defendants than to Messiah Jackson. Nothing in Ward's testimony — that Griffin was present at robberies, gave Ward his initiation deal, and carried a firearm — approaches the documented managerial conduct the PSR described for Jackson. Applying § 3B1.1(b) to Griffin while withholding it from defendants who personally shot victims would be an internally inconsistent result that the PSR's own reasoning cannot support.

The most significant passage in the Rodriguez trial transcript is Ward's cross-examination admission: he accompanied Griffin on the robberies because he "was just turning Grim" and "if [Tate] said I had to go, I had to go." Trial Tr. at 309. That testimony describes a gang norm — junior members defer to senior members during initiation — not a managerial relationship. As the PSR explains, the Grimz required prospective members to perform "deals," often violent acts, to "prove you got heart." Trial Tr. at 149. The deference Ward showed Griffin was the deference all initiates show to the member supervising their initiation; it was not evidence of ongoing supervisory direction of Ward's criminal activities.

Under Second Circuit precedent, a defendant who exercises authority on a single occasion or within a narrow initiation context does not thereby become a "manager or supervisor" for § 3B1.1(b) purposes unless that authority reflects an actual ongoing supervisory *relationship*. *See Hertular*, 562 F.3d at 448. Moreover, Application Note 4 expressly cautions that "titles such as 'kingpin' or 'boss' are not controlling." U.S.S.G. § 3B1.1 cmt. n.4. A gang membership rank — standing alone — fares no better. The Court must look to whether Griffin exercised actual control over Ward's conduct, directed his participation in specific criminal activities, or claimed a larger share of criminal proceeds as a result of any supervisory relationship. The record is devoid of any such evidence.

## CONCLUSION

For all these reasons, Mr. Griffin respectfully urges the Court to decline to apply the three-level enhancement under U.S.S.G. § 3B1.1(b).

Respectfully submitted,

s/*Thomas Ambrosio*
s/*Lisa Scolari*
Thomas Ambrosio
Lisa Scolari